Good morning, Your Honor. Excuse me, Henry Adelson, for the appellant, Arthur Hernandez. If it may please the Court, I'd like to invite the Court's attention to the defendant's preliminary statement, page 4, in their reply brief, because that basically sums up our argument why the LMRA does not apply to the facts in this case. Firstly, they argue that we must look to and interpret, rather not look to, but interpret the collective bargaining agreement. But they don't say what is provision in the collective bargaining agreement covers the facts in this case and why it has to be interpreted, why it's ambiguous. But isn't the whole basis of Mr. Hernandez's claim that he was unfairly treated by Ms. Snyder and the Joint Committee in regard to his service as a casual worker and being excluded from eligibility for work on the docks? No, Your Honor. If I may just briefly invite the Court's attention to what took place. Mr. Hernandez, after he was injured, applied to be on a list, merely a list. He was not seeking union employment. At that time, he went to dispatch and he asked, how do I get my name on the list? He was told... Back on the list. Back on the list, not registering with the union. Off the list by virtue of the fact that he hadn't worked for six months or so. Correct, Your Honor, that's correct. And that's all done pursuant to the terms of the collective bargaining agreement and the rules and regulations that the Joint Union Employer Committee established for casual workers and unionized workers, is it not? I disagree, Your Honor, for the simple reason that the collective bargaining agreement, this was an event that took place outside the course and scope of employment. He was not employed by anyone. It's a list that is open to everyone, and if they are allowed to be on the list, they're given an identity card. He wasn't seeking union membership and he didn't have a grievance against the employer. You have to be a member of the union to work on the waterfront as a casual laborer. You have to go through the dispatch hall, don't you? That's correct, Your Honor. Okay. So where did the list come from? The list is a random list of names. Filed by whom? Well, what happens is people who are interested in working on the waterfront apply, and the dispatcher will accumulate a list based on the fact that they are not a security risk, they're allowed to work on the waterfront, and there is no defined rule. And certainly in this case, the defendants haven't told us where in the collective bargaining agreement covers this and why it must be interpreted because it's ambiguous as to this case. Why do you have to be on a list to work on the waterfront? Well, the reason they – what happens is when there's insufficient union members, as I understand it, they'll go alphabetically on a list of names of people who would like to work on the waterfront. And the plaintiff's, Mr. Hernandez's, aspiration was to work the list long enough so he could become a union member. Correct. He would like to eventually – there are two advantages. The first advantage is a real advantage that if he can work even as a casual or non-union, he makes more money than he could as a janitor. On the other hand, the second advantage is that when he's in a union, he not only has priority on the list, but he has medical benefits, retirement benefits. There's a whole long list of benefits that a union worker has that is not available to a non-union worker. Or if he wanted to buy a medical policy, it would be beyond the cost of the average worker because this covers his family. There's no need for a preexisting condition. Whatever injures – whatever the worker's family complains of, the union will pay for. And our argument is that in order to be covered by the LMRA, you have to either breach the contract, and we take the position that there was no contract covering the worker at this time because he was not employed. He wasn't on the dock. There's no grievance. He simply says, I'd like my name on the list. And then the representative comes in and says, enter medals, jumps in and says, well, you need an LS-208. Well, Mr. Hernandez had no idea what an LS-208 is, and she does not tell him in a declaration. She doesn't make it clear. She makes it clear in a declaration to the lower court that she's familiar with the workings of the waterfront, but she admits to telling him that that's a form. The duty to produce that form comes from the employee. Help me. You sought injunctive relief as one of the remedies prayed for in your complaint, did you not? I believe there's an allegation for injunctive relief. And the injunctive relief, I assume, would be to order him reinstated on the list, correct? Hopefully that he would be placed on a list to be eligible for a hire. For hire. Yes. And he was taken off the list because he didn't, according to the committee, he didn't abide by their rules for maintaining eligibility to be on the list. And what you're talking to us about now are basically what he needed to do in the eyes of Ms. Snyder and the committee in order to be eligible for reinstatement. I just don't understand how a court can adjudicate the plaintiff's claim without looking at the terms of the bargaining agreement and the side documents, the port rules, the committee rules that cover how he goes about getting back on the list and whether or not he was unfairly excluded. Well, Your Honor, I agree that the court may look to the collective bargaining agreement, which is, I believe, the Cramer case, but it's different from interpreting the collective bargaining agreement. And if the defendants want to say that the collective bargaining agreement has to be interpreted, then tell us where it has to be interpreted and why it's ambiguous as to these facts. As it now stands, we don't know what the rules are. The court can't even know anything about how Mr. Hernandez came to be a waterfront worker, why it was unfair to exclude him from that line of work, and why he should be reinstated on the list without looking at the terms of the collective bargaining agreement and the rules. Well, Your Honor, that's one of the problems in the case is that we cannot find and we have not been told where to look in the collective bargaining agreement that covers a nonunion worker off the clock. Well, I looked at the collective bargaining agreement. There are numerous references to casual workers in the CDA, but I understand that to be not the exclusive source of the rules and regulations that attend dock workers. Is that correct? Well, I respectfully disagree because, as I understand it, the casual nonunion worker is covered by the collective bargaining agreement while he's at work, and off the dock, off the work, I haven't seen in the defendant's reply specifically what provision of the collective bargaining agreement would apply to this case. That has to be interpreted. Well, your position is you're not dealing with the collective bargaining agreement at all, correct? Correct. You're dealing with the rules that regulate the dispatch list, right?  Well, if there are rules, yes. Well, what about the coast-wise rules? Don't those regulate the dispatch list as to who can get on and who is not on and what privileges there are once one is on the list? I had looked at the dispatch list, Your Honor, and I could not find anything that pertains to who can get on the dispatch list. Obviously, union members are always allowed to be dispatched, and when there's insufficient, then they can look to the people from the community who want to be on the waterfront list, but I have not found any clear rule. Counsel, as I read our case law under Section 301, we are not limited in our analysis strictly to the collective bargaining agreement. It encompasses additional documents, in this case, the coast-wise rules, and perhaps there is yet a third source of regulation, which would be some kind of rule promulgated by the Port Committee for Port Hueneme, and that's all, for purposes of the labor law analysis, considered part and parcel of the Section 301 analysis, is it not? Well, that's true, and you're correct, but the only other document we were able to or presented to us was a supposedly side agreement that deals only with union members who wish to be elevated to a clerkship. It doesn't speak of casuals, and that's part of our record. The 9.11 side agreement has nothing to do with Mr. Hernandez's situation, and our argument is that if you're going to apply the collective bargaining agreement or say there's a breach, there's a distinct difference between looking at something and having to be shown a paragraph in the provision that's vague and ambiguous and against these facts must be interpreted, and we don't see that. Counsel, do you want to save any time for rebuttal? Yes, sir. May I proceed? You may. May it please the Court, Larry Lawrence with Morgan Lewis on behalf of Respondents, Pacific Maritime Association, and Janet Snyder. Do you want to introduce your co-counsel? Clifford Seffness as well with Morgan Lewis. Thank you. The Pacific Maritime Association and the International Longshore and Warehouse Union both interpret Section 9.11, the post-wide rules of regulation and deregulation, as applying to casual longshore workers. As we've heard from appellant, appellant does not. Appellant believes that the proper interpretation of Section 9.11, the post-wide rules of regulation and deregulation, does not apply to casual longshore workers. In fact, in appellant's brief, in the reply, appellant has even gone so far as to argue to this Court that it should interpret that provision as being unenforceable and even unconscionable. Those disputes were exactly what gave the district court Section 301 preemption. It would require the court to interpret and apply those provisions in order to resolve them. Obviously, Section 301 of the Labor Management Relation Act provides the district court with federal question jurisdiction, not only over claims that involve a breach of contract or claims that require a court to interpret provisions of the collective bargaining agreement, but also over claims that are inextricably intertwined with the collective bargaining agreement. Is there a provision in the CBA that authorizes the promulgation of the coast-wise rules, or is there something that ties it in specifically? Yes, Your Honor. What section is that? I believe it's Section 8.31, as well as Section 17.11. 17.11 of the CBA deals with the creation of the Joint Port Labor Relations Committee. One of the duties of the Joint Port Labor Relations Committee is to maintain and operate dispatch halls, to exercise control over the registered lists of the port, as specified in Section 8.3. In Section 8.3 of the CBA contains provisions relating to registration, deregistration. What Your Honor's point is going to is that the coast-wide rules, and specifically even the minutes and agreements of the meetings of the Joint Port Labor Relations Committee, by this Court's case law, are incorporated and become a part of the collective bargaining agreement. And so Appellant's argument that those provisions don't, in fact, apply to him, versus both the employer and the union's arguments that, in fact, those provisions do apply to him. So is it your position that he has to go to the NLRB within six months of his claim accruing in order to press that? Well, he certainly would need to file a grievance and exhaust the grievance machinery first. And to the extent that he was unable to resolve that issue through the proper grievance machinery, if he were to assert his claims in the form he is now, is it basically a breach of contract? Yes. I mean, fundamentally, his claim for interference with economic advantage is a claim for breach of contract. We see that from the case law of the California Supreme Court in Shoemaker v. Myers. The Court there explained that when a party is serving a claim for interference with economic advantage to an economic relationship where the person who the claim is being asserted to is a party to that economic relationship, it fundamentally is a claim for breach of contract. Counsel, you did not cite, in response to Judge Lawson's question, paragraph 8.56 of the Collective Bargaining Agreement, which refers to making arrangements for the employment of casuals by the joint committee. Is that relevant at all? Absolutely, Your Honor. I mean, you can find references to casuals and the ability of the JPLRC to create rules relating to the registration, deregistration, and to manage the lists of the courts throughout the Collective Bargaining Agreement. The sections I cited to Judge Lawson were just some of the initial ones that came to the top of my mind. It's Lawson. I apologize, Your Honor. Lawson. Excuse me. So even putting aside the issue of interpretation of Section 9.1, the CBA, and the side agreements, there is still the fundamental issue that the claim both in the First Amendment and the Second Amendment complaint for interference with prospective economic advantage is nothing more but an artfully fled claim for breach of contract. And that claim, too, provided the district court with federal question jurisdiction. Now, plaintiffs, excuse me, the appellant has attempted to argue that as a casual longshore worker, he is somehow not subject to Section 301 because he's not a true union member. But again, the case law of this Court makes clear that as a casual longshore worker, he's still a member of the bargaining unit. He's still subject to the terms and conditions of the CBA and its side agreements, and therefore the union still owes him a duty of fair representation as Section 301 applies. His new claim, initially before the district court, the appellant argued that the economic relationship that was interfered with was his right to obtain dispatch pursuant to the CBA, which PMA is a part of. On appeal now and in his papers, the appellant has attempted to shift that argument a little bit to say that the economic right that is being interfered with is his right to union membership. But that right to union membership is really still is grounded upon and fundamental to the collective bargaining agreement, the side agreements, and the coast-wide rules regarding regulation and deregulation. So therefore, it's really indistinguishable and inseparable from the collective bargaining agreement and still results into basically a claim for a breach of contract. Is that Audet? Yes, exactly, Your Honor. Audet was a case which was talking about individuals who claim that representations and promises were made to them governing their registration, and the court found that that still involved preemption issues given the need to interpret and apply the collective bargaining agreement. Fundamentally is what the situation is here. So because the district court had jurisdiction over both the First Amendment complaint and the Second Amendment complaint based on 301 preemption, both in terms of those claims that would require interpretation of Section 9.11, the coast-wide rules, the CBA, but also because of the fundamental breach of contract claim that was represented in the interference with prospective economic claims, the court had subject matter jurisdiction. And unless there's any further questions, I don't think I have anything else. I think not. Thank you. Thank you, Your Honor. Counsel will give you a minute on rebuttal. I will be very brief. Firstly, if I may invite the Court's attention to page 123 of the excerpt of record, the appellant's excerpt of record, which is labeled Class B Longshoreman and Class B Clerk shall be. The punishment for the first offense is a probationary warning, and counsel for the appellees has argued that we feel that's unconscionable, and certainly permanent disbarment from work is unconscionable. That's very clear. Secondly, counsel raised the Shoemaker case, which is a workers' compensation case where interference with a prospective advantage is subsumed into workers' compensation because it's the exclusive remedy. And there's a section under the Labor Code, 132A, that covers unlawful termination, and the Court understood that. The other point I want to get is the Odette case. That was a settlement agreement, and it's distinguishable from this case. The material fact in this case is very different because nothing we contend arose out of the course and scope of employment. We agree that the collective bargaining agreement will cover workers on the waterfront, but we also want to know where in the collective bargaining agreement, what's inherent in the facts in this case that must be looked at in the collective bargaining agreement? So that is unclear. It's not enough, and we respectfully invite the Court's attention to Vallis and Kramer, to say that looking at the document is the same as interpretation, and therefore there's a 301 preemption. Thank you very much. Thank you. Hernandez v. Pacific Maritime Association is submitted.
judges: Lawson, Hall, Tallman